GUARDIANSHIP OF BREAULT: LIBERTY and another, Appellants, v. BREAULT, Guardian, and another, Respondents.

*November 27—December 20, 1963.*

116

118

For the appellants there were briefs by *McEwen & Senn* of River Falls, and oral argument by *Ralph E. Senn.*

For the respondents there was a brief by *Doar & Knowles* of New Richmond, and oral argument by *Warren P. Knowles.*

WILKIE, J. Three issues are presented on this appeal. They are as follows:

1. Did the county court lack jurisdiction to approve the Bracht sale because:

(1) The guardian never applied for permission to sell the property prior to submitting the agreement to the court for approval;

(2) The petition did not set forth the statutory grounds for sale;

(3) The court never gave notice of the proposed sale to the appellants prior to approving the sale; and

(4) The court did not adjudicate claims against the guardianship estate prior to approving the sale?

2. Could the county court properly refuse the higher alleged offer of Robert Liberty for the Terrace Garden property because it was not made in a timely fashion?

3. Should the sale to Bracht be voided because the terms of the agreement overvalue the Breaults' homestead interest?

### Objections as to Jurisdiction.

We will first consider the four objections as to the court's jurisdiction to enter its orders approving the sale to Bracht.

(1) The appellants seek to void the sale to Bracht on the ground that the court failed to comply with jurisdictional

procedural requirements outlined in sec. 319.19 (5) (b), Stats.,[1] and secs. 296.06, 296.07, 296.10, and 296.11.[2] The

[1] "319.19 MANAGEMENT OF WARD'S ESTATE. . . . (5) *Sales and other dispositions.* . . . (b) The court, on the application of the guardian of the estate or of any other person interested in the estate of any ward, after such notice if any, as the court directs, may authorize or require the guardian to sell, mortgage, pledge, lease or exchange any property of the guardianship estate upon such terms as the court may order, for the purpose of paying the ward's debts, providing for his care, maintenance and education and the care, maintenance and education of his dependents, investing the proceeds or for any other purpose which is in the best interest of the ward."

[2] "296.06 REALTY OF WARDS; GROUNDS FOR MORTGAGE, SALE, LEASE. Any real estate, or interest therein belonging to a minor or to a person incompetent to manage his affairs may be sold, mortgaged or leased: (1) When the personal property and the income of the real estate of such minor or incompetent person are together insufficient for the payment of his debts or for the maintenance and education of himself and family; (2) When the interests of such minor or incompetent person require or will be substantially promoted by such disposition on account of such real estate or interest therein being exposed to waste or dilapidation, or being unproductive, or for other peculiar reasons or circumstances."

"296.07 REALTY OF WARDS OR INCOMPETENTS; APPLICATION FOR SALE OR ENCUMBRANCE. The application for such disposition must be made to the circuit or county court of the county in which such real estate or some part thereof is situated or to the presiding judge of either court, or to the county court or presiding judge thereof of the county in which the general guardian for such minor or incompetent person has been appointed, by petition of the general guardian of the minor or of such incompetent person or by any relative or other person in behalf of either. Such petition must be verified and must set forth the facts which would authorize the selling, mortgaging or leasing of such real estate or some part thereof for one or more of the reasons set forth in s. 296.06. Whenever the real estate sold or some part thereof is situated in a county other than that in which the proceeding is taken, a certified copy of the order confirming the sale containing the name of the purchaser, the selling price, and a description of the property sold shall be recorded in the office of the register of deeds of the county in which such real estate or any part thereof is situated. When said minor or incompetent person has a general guardian and the application is to any court other than the court in which such general guardian was

appellants argue that a proper reading of secs. 296.10 and 296.11 requires the guardian to obtain permission to *negotiate* a sale of real estate, in addition to court approval of a completed agreement. They contend that because the guardian appeared before the court initially with a fully negotiated agreement, seeking approval of its terms, the entire proceeding is void. But under secs. 296.10 and 296.11 the focus is upon approval of a final agreement. To require the guardian to seek permission to *commence* negotiations would be a superfluous jurisdictional step wholly unrelated to the guardian's duty of intelligent management of the ward's estate. The reasonableness of the fully negotiated agreement is the primary concern of the county court.

(2) Appellants further contend that the court's order approving the Bracht sale is void because the guardian's petition of March 29, 1963, did not expressly refer to the statu-

appointed, notice of hearing of said application shall be given by mailing a copy of such notice to the judge of the court that appointed such general guardian, and also to the general guardian, unless he is the petitioner, at least 10 days before the date of the hearing."

"296.10 ORDER FOR LEASE, MORTGAGE, SALE. If, after an examination of the matter by the court or judge to which application is made, without a reference, or on the coming in of the report of the referee, and on examination of the matter, it shall satisfactorily appear that a disposition of any part of the real estate of such minor or incompetent person or any interest therein is necessary and proper, for any of the causes mentioned in s. 296.06 such court or judge shall make an order directing and authorizing the guardian to contract for the leasing, mortgaging or sale of such real estate or interest therein or of such part thereof as the court or judge shall deem proper in such manner and with such restrictions as shall be deemed expedient."

"296.11 CONTRACT FOR LEASE, MORTGAGE, SALE; APPROVAL. No lease, mortgage or sale shall be made until an agreement therefor shall have been entered into by such guardian subject to the approval of the proper court or judge. Upon the confirmation of such agreement by such court or judge the guardian must execute a lease, mortgage or deed as directed by the order of confirmation. The guardian, general or special, may expend usual and customary brokers' fees, as well as necessary expenditures for abstracting, title insurance, survey, revenue stamps and other necessary costs and

tory grounds for sale set forth in sec. 296.06, Stats.[3] However, the court had been previously informed during the course of the incompetency proceeding, of the economic position of the guardian, and the need to sell the property as a means of maintaining the ward and satisfying his debts. Because the petition incorporated the terms of the Bracht-Breault agreement, the court possessed all the necessary data to determine whether the proposed sale was in the best interests of the ward. The purpose of secs. 296.06 and 296.07 was fulfilled.

(3) Appellants also object on the ground that they did not receive any notice of the proposed sale to Bracht, approved by the court on March 29, 1963, in an *ex parte* proceeding.

Secs. 296.07, 296.10, 296.11, and sec. 319.19 (5) (b), Stats., do not make notice to interested parties a jurisdictional requirement of a valid sale of the ward's real estate. Ch. 468, Laws of 1957, was a basic revision of the substantive rules and procedures relating to guardianships. Under sec. 319.19 (5) (b) as approved in this law, notice to interested parties of the pending sale is a matter within the discretion of the county court.[4]

In the case at bar, the court did not abuse its discretion by not giving the appellants notice of the pending sale. The

expenses in connection with the sale, all subject to review and approval by the court."

[3] *Supra*, p. 120, footnote.

[4] "319.19 (5) (b) The court, on the application of the guardian of the estate or of any other person interested in the estate of any ward, *after such notice if any, as the court directs,* may authorize or require the guardian to sell, mortgage, pledge, lease or exchange any property of the guardianship estate upon such terms as the court may order, for the purpose of paying the ward's debts, providing for his care, maintenance and education and the care, maintenance and education of his dependents, investing the proceeds or for any other purpose which is in the best interest of the ward." (Emphasis added.)

appellants had never indicated that they were interested in purchasing the property themselves, either during the incompetency proceeding, or anytime prior to March of 1963. They only expressed desire that the property be sold to satisfy the claims of creditors. The county court could reasonably believe that the Bracht offer afforded reasonable protection to creditors and therefore no notice to this class of persons was necessary. Moreover, the appellants were given full opportunity to challenge the validity of the original sale on both procedural and substantive grounds and offer their own alternative proposal at the hearing on reconsideration of the Bracht proposal, held on April 16 and April 30, 1963. Notice of this proceeding was given to all creditors.

(4) Appellants finally object to the court's jurisdiction because claims filed against the ward's estate prior to the sale had not been adjudicated prior to the approval of the sale.

The appellants cite sec. 319.22, Stats.,[5] which provides that the provisions and procedures applicable to the adjudication of claims against a decedent's estate are applicable

---

[5] "319.22 CLAIMS. (1) *Payment.* Every general guardian shall pay the just debts of the ward out of the ward's personal estate and the income of his real estate, if sufficient, and if not, then out of his real estate upon selling the same as provided by law. But a temporary guardian shall pay the debts of his ward only on order of the court.

"(2) *Proceedings to adjust claims.* The guardian or a creditor of any ward may apply to the court for adjustment of claims against such ward incurred prior to entry of the order appointing the guardian or the filing of a lis pendens as provided in s. 319.215. The court shall by order fix the time and place it will adjust claims and the time within which all claims must be presented or be barred. Notice of the time and place so fixed and limited shall be given by publication as in estates of decedents; and all statutes relating to claims against and in favor of estates of decedents shall apply. As in the settlement of estates of deceased persons, after the court has made such order no action or proceeding shall be commenced or maintained in any court against such ward upon any claim of which the county court has jurisdiction."

to the adjudication of claims against a ward's estate. They also rely on sec. 316.07 [6] (pertaining to claims against a decedent's estate) which provides that a hearing on the sale of a decedent's real estate must be postponed if the heirs or devisees challenge the validity of any claims.

In the instant case the guardian had not actually challenged any claims prior to the proposed sale and therefore the county court could properly assume that all claims filed prior to March 29, 1963, would be allowed and the court could properly evaluate whether the Bracht offer was reasonable in the light of the value of the property and the financial status of the ward's estate.

Since no claims had been challenged up to March 29, 1963, there was no need to postpone the hearing. The essential purpose of the two quoted statutory provisions is to make sure that the county court has a clear notion of how the proceeds are to be allocated between the guardianship and the creditors before he can determine whether a proposed sale agreement is reasonable and fair to all interested parties. The trial court here had all of this information.

In any event, the statutes require a formal adjudication of claims prior to the approval of a proposed sale of real estate only when the claims have actually been contested and there was no such contest pending here.

### Timeliness of the Liberty Offer.

What of the alleged offer by Robert Liberty for the same property at the gross price of $78,000, as compared with the Bracht proposal of approximately $61,000? There is no

---

[6] "316.07 CONTESTING CLAIMS, DEBTS DISPUTED, HEARING ADJOURNED. If on such hearing it shall appear that the heirs or devisees of the real estate in question or persons claiming under them contest the validity of any debt or claim which may be represented as existing against the estate, the hearing shall be postponed until the liability of the estate for such claim is finally determined."

question but that no one, not even Robert Liberty, had submitted any offer of purchase to the guardian prior to the presentation and approval of the Bracht sale. The Liberty offer, if it was such, was untimely. Although a guardian has a duty to seek and to support the offer which provides the most funds for the guardianship estate, assuming practical equivalence to any other offer as to the schedule and mode of payments and financial responsibility of the purchaser,[7] the guardian here had already submitted the only offer she had received and one which both she and the court considered fair and reasonable and in the best interests of the ward's estate and all interested parties.

Appellants argue that the *Anderson Case, supra,* required the county court in the instant case to consider and to order acceptance of the Liberty proposal even though it had already ordered approval of the Bracht proposal. In the *Anderson Case,* a guardian had received an offer to sell some of the ward's real estate to a school district for $100. The county court gave the guardian permission to enter into a final agreement. Negotiations between the guardian and the school district broke down and the district resorted to condemnation proceedings to obtain the land. One year subsequent to the permission to enter into negotiations, but prior to an order approving a final agreement, another party made an offer of $300. Under these circumstances, the guardian was obliged to accept the higher offer. No such obligation exists when the county court has already approved an agreement of sale which it deems to be fair and reasonable. To hold otherwise would make it difficult for the guardian to perform his duty of intelligent management of the ward's estate. Prospective purchasers of real estate would be hesitant to deal with the guardian if they knew that even after the court had approved a valid, binding contract with

[7] *In re Anderson* (1922), 176 Wis. 459, 186 N. W. 1019.

the guardian, such agreement could be set aside if another made a higher offer.[8]

Appellants' final contention is that the sale to Bracht should be voided because the terms of the agreement overvalue the Breaults' homestead interest.

The Bracht agreement allocates $10,000 to the Breaults in recognition of their homestead rights, and also provides for the payment of $150 per month for five years in settlement of "homestead and dower rights of the parties." The appellants argue that the homestead interest has been overvalued by approximately $10,000. But the county court has retained jurisdiction over this matter and specifically to supervise the allocation of the proceeds of the sale. It follows that the labels attached to various payments by the agreement will not finally determine the actual distribution of the proceeds of the sale. Further hearings may be held in the county court to determine who has the paramount interest in the payments as they come due. There is no reason for us on this appeal to void the entire sale because of this contention.

*By the Court.*—Two orders of March 29, 1963, and order of May 6, 1963, affirmed.

---

[8] *Guardianship of Nelson* (1963), 21 Wis. (2d) 24, 123 N. W. (2d) 505.